UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ULRIC THOMAS,

Plaintiff,

v. Case No. 5:06-cv-164-Oc-GRJ

MICHAEL J. ASTRUE,[1] Commissioner of Social Security,

Defendant.

_______________________________________/

**ORDER**

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 7) and both parties have filed briefs outlining their respective positions. (Docs. 23 & 24.) For the reasons discussed below, the Commissioner's decision is due to be **REVERSED and REMANDED.**

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on January 29, 2003, with a protective filing date of January 8, 2003. (R. 58-61.) Plaintiff's application was denied initially (R. 28-29), and upon reconsideration. (R. 31-32.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

("ALJ"). (R. 33.)The ALJ conducted an administrative hearing on April 12, 2005 (R. 319-357) and issued a decision unfavorable to Plaintiff on August 25, 2005. (R. 13-22.) The Appeals Council denied Plaintiff's request for review on March 8, 2006. (R. 4-7.) On May 8, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] See 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

---

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] Walker at 1003.

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

## III. SUMMARY OF THE EVIDENCE

Plaintiff was born on January 2, 1942 and was sixty-two (62) years old at the time his insured status expired on December 31, 2004 and was sixty-three (63) years old at the time of the decision. (R. 324.) Plaintiff has three years of college education and past relevant work experience as a bank clerk and bank operations manager. (R. 66, 79-86, 118.) Plaintiff contends that he became disabled on May 28, 2002 due to cancer residuals, shortness of breath, back pain, a heart condition, high blood pressure, and a colon condition. (R. 65, 97.)

The ALJ found that Plaintiff suffers from hypertensive cardiovascular disease and hypertension. (R. 21.)

The Court's evaluation of the medical record will be limited to the opinions of Drs. Ramaswami and Das because the one of the primary argumenst by Plaintiff in this case is that the ALJ improperly rejected their opinions.

---

[20] Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

The medical records document that Plaintiff was treated by Sukumaran Ramaswami, M.D. for at least two years from 2002-2004, for complaints of dyspnea (brought on by exertion), a valvular heart condition and obesity. (R. 141-161.) On July 11, 2003, upon request of Plaintiff's attorney, Dr. Ramaswami completed a "Treating Physician's Medical Assessment of Ability to do Work-Related Activities" form. (R. 135-140.) On the form Dr. Ramaswami indicated that Plaintiff can lift over 20 pounds, but could only carry that weight for short distances because of his dyspnea. The form also includes the notation that Plaintiff can stand and/or walk for less than 1 hour in an 8-hour work day and can only sit for 1-2 hours in an 8-hour work day due to his lower back pain, dyspnea, valvular heart disease, prostate cancer, hypertension, and obesity. Plaintiff can frequently balance, but only occasionally climb, stoop, crouch, kneel or crawl. Dr. Ramaswami also noted that Plaintiff is impaired in his ability to reach, handle, and push/pull due to his dyspnea. Lastly, Dr. Ramaswami stated that Plaintiff requires rest periods every 1-2 hours during the day for 15-30 minutes.

Plaintiff was referred by Dr. Ramaswami to Chandranath L. Das, M.D., F.A.C.C., in 2002, for a cardiac evaluation due to complaints of shortness of breath and ankle swelling for a period of three weeks. (R. 175-177.) Dr. Das diagnosed Plaintiff with shortness of breath/fatigue, consistent with congestive heart failure and left ventricular dysfunction, possible diastolic versus systolic dysfunction, controlled now; borderline hypertension, overweight, borderline diabetic, and borderline hyperlipidemia. Dr. Das referred Plaintiff for a 2 D Echo and doppler study and a stress thallium myocardial perfusion study. Plaintiff was also placed on a restricted calorie diet. (R. 177.)

Plaintiff underwent this testing on June 13, 2002, and returned to Dr. Das on June 25, 2002 to review the results. Dr. Das found that Plaintiff suffered from leg edema, probably secondary to chronic venous insufficiency, abnormal EKG, false/positive, hypertension, controlled, overweight, mild mitral and tricuspid regurgitation, elevated PSA. Dr. Das recommended that Plaintiff aggressively modify his risk factors with diet, weight loss and exercise. (R. 168.)

Plaintiff returned to Dr. Das for a follow-up examination on December 31, 2002. Dr. Das diagnosed Plaintiff with valvular heart disease with mild mitral and tricuspid regurgitation, hypertension, controlled, borderline diabetes, and obesity. (R. 165.) Dr. Das recommended that Plaintiff be placed on an 1800 calorie ADA diet and advised Plaintiff to lose weight.

On March 4, 2002, Dr. Das completed a Physical Capacity Evaluation on Plaintiff. On the evaluation Dr. Das noted that Plaintiff could lift less than 5 pounds occasionally; sit 7 hours in an 8-hour work day; stand 1 hour in an 8-hour work day, and walk zero hours in an 8-hour work day. Dr. Das classified Plaintiff as Class III, pursuant to the American Heart Association Guidelines, as a patient with cardiac disease resulting in marked limitation of physical activity and for whom less than ordinary activity causes fatigue, palpitation, dyspnea or anginal pain. (R. 163.)

## IV. DISCUSSION

In his RFC analysis, the ALJ determined that Plaintiff is capable of performing his past relevant work as a bank cashier and bank operations manager, and retains the residual functional capacity (RFC) to perform light work. Pursuant to SSR 83-10, light work is defined as lifting no more than 20 pounds at a time with frequent lifting or

carrying of objects weighing up to 10 pounds. "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."[23]

The ALJ's finding that Plaintiff can perform the requirements of light work directly conflicts with the opinions of Plaintiff's treating physicians, Drs. Ramaswami and Das, who both found that, at best, Plaintiff could only stand for 1 hour in an 8-hour workday. Instead of relying upon these opinions the ALJ findings followed the opinions of two state agency physicians who both found that Plaintiff could stand and/or walk about 6 hours in an 8-hour work day. (R. 247-254, 255-262.)

The law is well established that an ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.[24] If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, the treating source's opinion must be given controlling weight.[25]

The Eleventh Circuit has held that the opinion of a reviewing, non-examining physician cannot constitute substantial weight to contradict the opinions of a treating physician.[26] When the opinions of non-examining, reviewing physicians are contrary to

---

[23] SSR 83-10.

[24] Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

[25] SSR 96-2p.

[26] *See* Lamb v. Bowen, 847 F.2d, 698, 703 (11th Cir.1988).

those of examining physicians, they are entitled to "little weight in a disability case, and standing alone do not constitute substantial evidence."[27]

While the ALJ did reference in his decision the medical findings of Dr. Ramaswami and Dr. Das, notably the ALJ never specified what weight, if any, was given to their opinions, and never provided any reasons for not following the opinions of these treating doctors in his evaluation that Plaintiff retained the RFC to perform light work.

Accordingly, because the ALJ failed to articulate his reasons for not following the opinions of Plaintiff's treating doctors, the RFC analysis performed by the ALJ was critically flawed and requires that this case be reversed and remanded. On remand the ALJ should discuss the weight to be given to the opinions of Drs. Ramaswami and Das with regard to Plaintiff's exertional limitations and then after conducting a new RFC analysis consistent with this opinion the ALJ should evaluate whether Plaintiff can perform his past relevant work.[28]

## V. CONCLUSION

For the reasons discussed above, this action is due to be **REVERSED AND REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to conduct further proceedings consistent with

---

[27] Sharfaz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987).

[28] Because the Court has determined that the ALJ erred by failing to accord appropriate weight to the opinions of Plaintiff's treating doctors, and as a result the ALJ on remand will be required to conduct a new RFC analysis, the Court need not address the other arguments raised by Plaintiff with regard to the finding that Plaintiff can perform his past relevant work or with regard to the ALJ's credibility finding regarding pain.

this Order and to conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter final judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 18, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel